IN THE UNITED STATES DISTRICT COURT
FOR THE DISTRICT OF MARYLAND

Rochelle Campbell Shields,   *

    Plaintiff,   *

                                        Civil No. TJS-23-3267

v.   *

Linear Mortgage LLC, *et al.*,   *

    Defendants.   *

            *     *     *     *     *     *

**MEMORANDUM AND ORDER**

Pending before the Court are the motions to dismiss (ECF Nos. 31 & 32) filed Defendants Rosenberg & Associates, LLC ("Rosenberg") and Linear Mortgage, LLC ("Linear").[1] Having considered the parties' submissions, I find that a hearing is unnecessary. *See* Loc. R. 105.6. For the following reasons, the motions to dismiss will be granted in part and denied in part.

**I.   Background**

Plaintiff Rochelle Campbell Shields filed this lawsuit to recover for damages under various consumer protection laws: the Fair Debt Collection Practices Act ("FDCPA"), 15 U.S.C. § 1692 *et seq.* (Count One); the Maryland Consumer Debt Collection Act ("MCDCA"), Md. Code, Com. Law § 14-201 *et seq* (Count Two); the Maryland Consumer Protection Act ("MCPA"), Md. Code, Com. Law § 13-101 *et seq.* (Count Three); the Maryland Mortgage Fraud Protection Act ("MMFPA"), Md. Code, Real Prop. § 7-401 *et seq.* (Count Four); and the Real Estate Settlement Procedures Act ("RESPA"), 12 U.S.C. § 2605 (Count Five). ECF No. 30. In response to Plaintiff's

---

[1] In accordance with 28 U.S.C. § 636(c), all parties have voluntarily consented to have the undersigned conduct all further proceedings in this case, including trial and entry of final judgment, and conduct all post-judgment proceedings, with direct review by the Fourth Circuit Court of Appeals if an appeal is filed. ECF No. 16.

Second Amended Complaint, Defendants Rosenberg[2] and Linear filed motions to dismiss. ECF Nos. 31 & 32. Those motions are fully briefed and ripe for decision.

## II.     Factual Allegations

The following allegations are accepted as true for the purpose of considering the Defendants' motions.[3] Plaintiff's claims arise from a home equity line of credit ("HELOC") that she executed, drew credit from, and stopped making payments on. Plaintiff is the owner of real property located at 430 Possum Court, Capitol Heights, Maryland. ECF No. 30 at 2. She obtained a HELOC[4] on this property in 2003. *Id.* The HELOC had a maximum credit limit of $15,500, but the maximum was increased to $91,000 in 2006. *Id.* In 2014, Plaintiff "got behind on her HELOC payments." *Id.* at 3. PNC Bank "charged off the HELOC in 2014 and ceased any collection efforts." *Id.*

Rosenberg sent a letter to Plaintiff dated September 15, 2021, informing her that Linear—the purported holder of the HELOC note—had referred the loan to Rosenberg for foreclosure. *Id.* The amount stated to be owed on the loan was $143,665.65. *Id.* On September 21, 2021, Rosenberg sent Plaintiff a Notice of Intent to Foreclose and threatened to file a foreclosure action within 45 days. *Id.* The Notice of Intent stated that the HELOC was not a federally related mortgage loan and that the amount to reinstate the loan was $39,629.85. *Id.* at 4. According to Plaintiff's allegations, she owed less money on the note than Rosenberg claimed. *Id.*

---

[2] Rosenberg's motion to dismiss was also filed on behalf of Defendants Diane Rosenberg and Mark Meyer. ECF No. 31-1 at 1.

[3] The allegations in Plaintiff's Second Amended Complaint are rambling and difficult to follow. Legal conclusions are mixed with factual allegations, some of which are themselves conclusory. In the future, Plaintiff's counsel should comply with the "short and plain" requirements of Fed. R. Civ. P. 8.

[4] A home equity line of credit is a line of credit "that allows the consumer to borrow money, using their home as collateral." *Lyons v. PNC Bank, N.A.*, 112 F.4th 267, 270 n.1 (4th Cir. 2024).

Plaintiff contacted Linear to obtain more information. *Id.* at 6. Linear claimed that Plaintiff owed a total of $143,000 on the loan (the sum of $90,000 in principal and $53,000 in interest and other fees). *Id.* It offered that Plaintiff could pay $90,000, an amount that it characterized as a "substantial discount." *Id.* Plaintiff and Linear were unable to negotiate a mutually satisfactory resolution. *Id.*

On February 16, 2023, Rosenberg sent Plaintiff another letter notifying her of its intent to foreclose. *Id.* The notice stated that Linear had a first-lien position and that the amount required to cure the default was $82,285.26. *Id.* at 7. Plaintiff retained a self-described "foreclosure stopper" to help with her situation, but the "foreclosure stopper" was "unable to make good on any of [his] claims" and eventually stopped contacting her. *Id.*

Seven months later, on September 14, 2023, Rosenberg filed a foreclosure action on behalf of Linear. *Id.* at 7-8. Plaintiff received a Notice of Intent to Foreclose, which was identical to the one sent to Plaintiff in February 2023. *Id.* Plaintiff alleges that the balance listed in the Statement of Debt was erroneous and that the Notice's claim that Linear held a first-lien position was false. *Id.* at 8-9. Along with the Notice, Plaintiff received a copy of the Note, an Appointment of Substitute Trustees, and a Statement of Debt. *Id.* Plaintiff alleges that Defendants knew they lacked standing to enforce the Note or bring a foreclosure action, that the amounts claimed for the outstanding balance and accrued interest and fees were inflated, and that "any interest older than 3 years was outside the statute of limitations." *Id.* Plaintiff's allegations on these points are conclusory and lack any factual substantiation. *See id.* at 9.

Thereafter, Plaintiff obtained new counsel. Her attorney sent a letter to Defendants dated November 3, 2023, which disputed their claims and asked for more information. *Id.* at 10. Plaintiff alleges that Linear responded to the letter but did not address all of her inquiries, including how

3

the "cure amount increased $30,000 more than total debt owed," how Linear could prove that the charges on the loan were incurred, and how Linear could collect on the loan after a seven-year period of having undertaken no collection activity. *Id.* Plaintiff also alleges that Linear failed to "provide a copy of its notice required by the MCPA" and that Linear "furnished a copy of the HELOC Note that contained no endorsement(s) and was not accompanied by an allonge." *Id.* According to Plaintiff, Linear did not conduct a reasonable investigation before it responded to her inquiries. *Id.* at 11.

In December 2023, Plaintiff learned that her property would be sold at a foreclosure auction in January 2024. *Id.* Her counsel sent a letter to Defendants claiming that the foreclosure sale was illegal and demanding that it be cancelled. *Id.* The letter also requested that Linear provide more information responsive to Plaintiff's November 3 letter. *Id.* Linear did not respond to the letter, but the foreclosure sale was cancelled. *Id.*

A month later, in January 2024, Defendants served a court filing on Plaintiff, which contained an allegedly "recently forged" endorsement by Linear and Rosenberg. *Id.* at 11-12. Plaintiff maintains that PNC Bank never endorsed the HELOC Note and that Linear and Rosenberg have never been in actual possession of the Note. *Id.* at 12.

On February 5, 2024, Linear sent a letter to Plaintiff's realtor, who is not identified in the complaint, threatening to charge Plaintiff for the legal fees that Linear incurs in connection with this lawsuit.[5] *Id.* Thereafter, Rosenberg mailed a "payoff" to Plaintiff's realtor, which reflected "an additional "$15,000," most of which was to account for Linear's attorney's fees in defending this case. *Id.* Plaintiff alleges that the "HELOC Note and DOT do not allow the Lender to charge the borrower with attorneys' fees for defending a lawsuit filed by the borrower," and that Rosenberg

---

[5] Plaintiff filed her original complaint on December 3, 2023. ECF No. 1.

4

was aware of this when it sent the letter. *Id.* Plaintiff's counsel sent another letter to Defendants seeking documentation to support the payoff amount. *Id.* Defendants did not respond. *Id.* at 13.

Plaintiff's counsel sent another letter to Defendants on May 20, 2024. *Id.* In this letter, Plaintiff demanded that "Linear remove all interest, fees and penalties on the loan that were assessed during any period of time that Linear did not sent [sic] monthly mortgage statements to Plaintiff." *Id.* Defendants did not respond to the May 20 letter. *Id.*

### III.  Legal Standard

Rule 12(b)(6) permits a court to dismiss a complaint if it fails to "state a claim upon which relief can be granted." "The purpose of a Rule 12(b)(6) motion is to test the sufficiency of a complaint, [and not to] resolve contests surrounding the facts, the merits of a claim, or the applicability of defenses." *Edwards v. City of Goldsboro*, 178 F.3d 231, 243 (4th Cir. 1999). A complaint must contain "sufficient factual matter, accepted as true, to state a claim to relief that is plausible on its face." *Ashcroft v. Iqbal*, 556 U.S. 662, 663 (2009) (internal quotation marks omitted). And a complaint must consist of "more than labels and conclusions, and a formulaic recitation of a cause of action's elements will not do." *Bell Atl. Corp. v. Twombly*, 550 U.S. 544, 545 (2007). "A claim has facial plausibility when the plaintiff pleads factual content that allows the court to draw the reasonable inference that the defendant is liable for the misconduct alleged." *Iqbal*, 556 U.S. at 678.

When considering a motion to dismiss, a court must accept as true the well-pled allegations of the complaint and "construe the facts and reasonable inferences derived therefrom in the light most favorable to the plaintiff." *Ibarra v. United States*, 120 F.3d 472, 474 (4th Cir. 1997). While a court must take the facts in the light most favorable to the plaintiff, it "need not accept the legal conclusions drawn from the facts" and "need not accept as true unwarranted inferences,

unreasonable conclusions, or arguments." *E. Shore Markets, Inc. v. J.D. Assocs. Ltd. P'ship*, 213 F.3d 175, 180 (4th Cir. 2000).

"Federal Rule of Civil Procedure 8(a)(2) requires only 'a short and plain statement of the claim showing that the pleader is entitled to relief,' in order to 'give the defendant fair notice of what the . . . claim is and the grounds upon which it rests.'" *Twombly*, 550 U.S. at 555 (quoting *Conley v. Gibson*, 355 U.S. 41, 47 (1957)). A complaint generally "does not need detailed factual allegations." *Id.* So long as the factual allegations are "enough to raise a right to relief above the speculative level," the complaint will be deemed sufficient. *Id.* A "well-pleaded complaint may proceed even if it strikes a savvy judge that actual proof of those facts is improbable and that a recovery is very remote and unlikely." *Id.* at 556 (internal quotation marks omitted).

## IV.   Analysis

Defendants raise a variety of theories in their motions to dismiss. The Court will address each argument in turn.

### A.   *Colorado River* Abstention

Linear argues that the Court should abstain from exercising jurisdiction pursuant to the *Colorado River* abstention doctrine. ECF No. 32-1 at 5. In *Colorado River Water Conservation Dist. v. United States*, 424 U.S. 800, 818 (1976), the Supreme Court held that a district court may stay a case when faced with parallel federal and state proceedings for purposes of "wise judicial administration." While abstention is authorized in some cases, it "is the exception, not the rule." *Id.* at 813. Two conditions must be satisfied for a court to abstain under the *Colorado River* doctrine: (1) there must be parallel litigation in state and federal court, and (2) there must be "exceptional circumstances warranting abstention." *Gannett Co., Inc. v. Clark Constr. Grp., Inc.*, 286 F.3d 737, 741 (4th Cir. 2002) (citing *Colorado River*, 424 U.S. at 813). Courts apply *Colorado*

*River* abstention "parsimoniously." *vonRosenberg v. Lawrence*, 849 F.3d 163, 167 (4th Cir. 2017) (explaining that "[t]he rule is well recognized that the pendency of an action in the state court is no bar to proceedings concerning the same matter in the Federal court having jurisdiction").

As to the first condition, suits in state and federal court are parallel "if substantially the same parties litigate substantially the same issues in different forums." *vonRosenberg*, 849 F.3d at 168 (quoting *New Beckley Mining Corp. v. Int'l Union, United Mine Workers of Am.*, 946 F.2d 1072, 1073 (4th Cir. 1991)). "It is not enough for parties in the state and federal actions to be merely aligned in interest." *Id. Colorado River* abstention is not proper if resolution of the state suit would have a *res judicata* effect on only some of the federal claims. *Id.* Nor is it proper when the remedies sought in the state and federal actions differ. *Id.* Abstention under *Colorado River* is only proper if the Court can conclude "that the parallel state-court litigation will be an adequate vehicle for the complete and prompt resolution of the issues between the parties." *Id.* (quoting *Moses H. Cone Mem'l Hosp. v. Mercury Constr. Corp.*, 460 U.S. 1, 28 (1983)). Otherwise, "it would be a serious abuse of discretion to abstain." *Id.*

For the second condition, courts carefully balance the following factors to decide whether exceptional circumstances warrant abstention:

> (1) whether the subject matter of the litigation involves property where the first court may assume in rem jurisdiction to the exclusion of others; (2) whether the federal forum is an inconvenient one; (3) the desirability of avoiding piecemeal litigation; (4) the relevant order in which the courts obtained jurisdiction and the progress achieved in each action; (5) whether state law or federal law provides the rule of decision on the merits; and (6) the adequacy of the state proceeding to protect the parties' rights.

*vonRosenberg*, 849 F.3d at 168. While courts consider these factors "holistically," the balance is "heavily weighted in favor of the exercise of jurisdiction." *Moses H. Cone*, 460 U.S. at 16.

The Court cannot abstain from the exercise of jurisdiction in this case under the *Colorado River* doctrine because the state and federal proceedings are not parallel. The proceeding pending in state court concerns Defendants' ability to foreclose on Plaintiff's property. In this case, Plaintiff is seeking monetary damages for Defendants' purported violation of various consumer protection laws. While the state court's ruling will likely have preclusive effect on some of Plaintiff's claims in this case, it will not resolve all of Plaintiff's claims. And while there may be some overlap in the issues to be decided in the state and federal actions, they are not sufficiently identical to be treated as parallel proceedings under the *Colorado River* doctrine.

The Court recognizes that a different result was reached under similar circumstances in *Williams v. Stephen*, No. ABA-24-1601, 2024 WL 4555729 (D. Md. Oct. 23, 2024). As stated above, the *Colorado River* doctrine requires that state and federal actions be nearly identical for the Court to decline to exercise jurisdiction. The state and federal actions in *Williams* are different than those involved in this case, so the *Williams* court's finding that the actions were "parallel" has little persuasive value in this case. The Court is sympathetic to Linear's argument on this point, especially its contention that allowing this action to proceed while the state court proceeding is ongoing will result in the waste of resources. But because the Court's discretion to abstain is constrained, the Court must reject Linear's argument. The Court will not abstain under the *Colorado River* doctrine.

    **B.**    **Rooker-Feldman**

Alternatively, Defendants argue that the Court lacks subject-matter jurisdiction pursuant to the *Rooker-Feldman* doctrine, which bars actions in federal district court "brought by state-court losers complaining of injuries caused by state-court judgments rendered before the district court

proceedings commenced." *Exxon Mobil v. Saudi Bask Indus. Corp.*, 544 U.S. 280, 281 (2005). ECF No. 32-1 at 8.

"Federal courts are not courts of general jurisdiction; they have only the power that is authorized by Article III of the Constitution and the statutes enacted by Congress pursuant thereto." *Brickwood Contractors, Inc. v. Datanet Eng'g, Inc.*, 369 F.3d 385, 390 (4th Cir. 2004) (quoting *Bender v. Williamsport Area Sch. Dist.*, 475 U.S. 534, 541 (1986)). Accordingly, "when a federal court concludes that it lacks subject-matter jurisdiction, the court must dismiss the complaint in its entirety." *Arbaugh v. Y&H Corp.*, 546 U.S. 500, 514 (2006).

Under 28 U.S.C. § 1257, the United States Supreme Court has jurisdiction to hear appeals from state court decisions in cases that raise questions of federal law. Because such jurisdiction was not conferred on the lower federal courts, the *Rooker-Feldman* doctrine essentially precludes "lower federal courts . . . from exercising appellate jurisdiction over final state-court judgments." *Lance v. Dennis*, 546 U.S. 459, 463 (2006). The doctrine even bars suits that do not explicitly claim to seek appellate review. *Reichert v. Hornbeck*, No. JMC-24-1865, 2025 WL 487337, at *6 (D. Md. Feb. 13, 2025). Claims that are "inextricably intertwined" with state court decisions are implicated by *Rooker-Feldman*, even if the claims were not actually adjudicated by the state court. *See Brown & Root, Inc. v. Breckenridge*, 211 F.3d 194, 198 (4th Cir. 2000).

The central question in the *Rooker-Feldman* analysis is "whether the federal plaintiff seeks to set aside a state court judgment or whether he is, in fact, presenting an independent claim." *Senftle v. Landau*, 390 F. Supp. 2d 463, 469 (D. Md. 2005) (quoting *Long v. Shorebank Dev. Corp.*, 182 F.3d 548, 555 (7th Cir. 1999)). *Rooker–Feldman* applies when the injury alleged resulted from the state court judgment itself, *Long*, 182 F.3d at 555, because in granting the federal plaintiff the relief sought, a federal court must determine that "the state court judgment was erroneously entered

9

or must take action that would render the judgment ineffectual," thereby passing on the merits of that state court decision. *Senftle*, 390 F. Supp. 2d at 469 (citing *Jordahl v. Democratic Party of Va.*, 122 F.3d 192, 202 (4th Cir. 1997)).

*Rooker–Feldman* is inapplicable when the alleged injury is distinct from the state court judgment or where a federal plaintiff raises an independent claim that is not "inextricably intertwined" with that state judgment. *Long*, 182 F.3d at 555. If a federal plaintiff "presents some independent claim, albeit one that denies a legal conclusion that a state court has reached in a case to which he was a party, then there is jurisdiction and state law determines whether the defendant prevails under principles of preclusion." *Senftle*, 390 F. Supp. 2d at 469 (quoting *Exxon Mobil Corp.*, 544 U.S. 280, 293). Since the Supreme Court's 2005 *Exxon Mobil* decision, the Fourth Circuit has only published one opinion where it found that a district court lacked subject matter jurisdiction under the *Rooker-Feldman* doctrine. *See T.M. v. Univ. of Maryland Med. Sys. Corp.*, 139 F.4th 344, 347 (4th Cir. 2025).

*Rooker-Feldman* does not apply here because Plaintiff is not seeking to overturn a state court judgment. In this case, Plaintiff seeks monetary damages for Defendants' alleged violation of state and federal consumer protection laws. She does not seek to prevent the foreclosure or vacate any order issued by the state court. Regardless of whether this Court is bound to reach the same or different conclusions as the state court, Plaintiff's claims are fundamentally independent of the matters to be resolved by the state court. *See Senftle*, 390 F. Supp. 2d at 469-70 (explaining that a plaintiff's allegations concerning violation of the FDCPA were not barred by *Rooker-Feldman* because the claims pertained to the manner in which the defendant collected the debt, not its underlying validity). The Court has no information that the state court decided whether Defendants committed the statutory violations alleged in Plaintiff's complaint or whether they are

liable for monetary damages for such violations. It appears that the state court's rulings have been and will be limited to the propriety of foreclosure on Plaintiff's property. For these reasons, *Rooker-Feldman* does not bar Plaintiff's claims.

### C. Claim Splitting

Linear argues that Plaintiff's claims must be dismissed for impermissible claim splitting. ECF No. 32-1 at 10. The rule against duplicative litigation, also referred to as claim splitting, "prohibits a plaintiff from prosecuting its case piecemeal, and requires that all claims arising out of a single wrong be presented in one action." *Sensormatic Sec. Corp. v. Sensormatic Elecs. Corp.*, 452 F. Supp. 2d 621, 626 (D. Md. 2006), *aff'd*, 273 F. App'x 256 (4th Cir. 2008) (quoting *Myers v. Colgate–Palmolive Co.,* 102 F. Supp. 2d 1208, 1224 (D. Kan. 2000) (internal citations omitted)). When a suit is pending in federal court, a plaintiff has no right to assert another action "on the same subject in the same court, against the same defendant at the same time." *Id.* (quoting *Curtis v. Citibank, N.A.*, 226 F.3d 133, 138-39 (2d Cir. 2000)). To determine whether two suits arise out of the same cause of action, the Court considers whether the "suits and the claims asserted therein arise out of the same transaction or series of transactions or the same core of operative facts." *Pueschel v. United States*, 369 F.3d 345, 355 (4th Cir. 2004) (internal quotation marks omitted).

In support of its argument that Plaintiff is engaged in impermissible claim splitting, Linear cites *Anderson v. Bank of New York Mellon Corp.*, No. GLR-20-654, 2021 WL 615080, at *1 (D. Md. Feb. 17, 2021), where the court dismissed a quiet title action as impermissible claim splitting where the subject property was in active foreclosure in state court. ECF No. 32-1 at 10. But the plaintiff's claims in *Anderson* are quite different from those that Plaintiff raises here. In *Anderson*, the plaintiff's claims were for:

> Demand to Establish the Mortgage Note Under TILA (Count 1); Demand to Verify and Validate Ownership and Control of All Debt Under the Mortgage Note (Count

11

2); Libel (Count 3); Demand to Present the Mortgage Note under UCC 3-501 (Count 4); Demand for Rule to Bring Judicial Foreclosure (Count 5); Impose Constructive Trust (Count 6); and Equity of Redemption (Count 7)

*Anderson*, 2021 WL 615080, at *2 (D. Md. Feb. 17, 2021). The plaintiff in *Anderson* sought declaratory and injunctive relief.

Here, Plaintiff's claims seek only monetary relief for the violation of state and federal consumer protection laws. For this reason, *Anderson* is of limited persuasive authority. And the same goes for *McGhee v. JP Morgan Chase Bank, N.A.*, No. DKC-12-3072, 2013 WL 4495797, at *5 (D. Md. Aug. 20, 2013), upon which *Anderson* relied. In *McGhee*, the court considered whether a federal plaintiff's claims were barred by *res judicata* as a result of a state court's rulings in a case arising out of the same facts. Here, as the parties agree, claim preclusion does not apply because the state court has yet to render a final judgment. The Court is not persuaded that Plaintiff's claims arise from impermissible claim splitting.

### D. Rosenberg's Arguments

Rosenberg presents several arguments as to why some of Plaintiff's claims must be dismissed. ECF No. 31-1 at 8-19. The Court will address these arguments in turn.

#### 1. FDCPA

Rosenberg argues that Plaintiff's claim under the FDCPA must be dismissed because Plaintiff never disputed the underlying debt with Rosenberg, and because Plaintiff admitted that she took out a loan, defaulted on the loan, and failed to repay the loan. *Id.* at 8-9. It is not clear which claims Rosenberg is referring to in this argument as the only allegation of the Second Amended Complaint that they cite is paragraph 21, which states, "By letter dated September 15, 2021, R&A informed Mrs. Shields that Linear referred the loan to it for foreclosure and that the amount owed on the loan was $143,665.65." ECF Nos. 31-1 at 8 &. 30 at 3. Rosenberg also argues

that Plaintiff's FDCPA claim is barred by the statute of limitations insomuch as the claim relates to a "validation of debt notice" that Plaintiff received on September 15, 2021. ECF No. 31-1 at 9. Again, Rosenberg does not cite to the specific parts of Plaintiff's FDCPA claim that it believes must be dismissed. Plaintiff's FDCPA claim alleges approximately 14 types of violations and does not specifically refer to the September 15, 2021 validation of debt notice (other than incorporating the earlier factual allegations by general reference). Because the Court does not understand Rosenberg's argument, Rosenberg has not shown it is entitled to the dismissal of Plaintiff's entire FDCPA claim under Rule 12.

> 2. **MCDCA**

Rosenberg argues that any of Plaintiff's claims regarding "the amount that is owed do not give rise to a MCDCA claim." ECF No. 31-1 at 9. In response, Plaintiff notes that the complaint charges Rosenberg with violating the MCDCA in 11 different ways. ECF No. 36 at 17. It is unclear which of the allegations in the MCDCA count that Rosenberg is challenging. In any event, the Court finds that Plaintiff has plausibly alleged that Rosenberg violated the MCDCA and will deny Rosenberg's Motion on this point. Its arguments may be better suited to presentation at summary judgment, but whenever they are raised, Rosenberg must be more specific about what it is challenging.

> 3. **Statute of Limitations**

Rosenberg argues that "the alleged violations related to the age of the debt must be dismissed" because there is no statute of limitations on foreclosure under Maryland law. ECF No. 31-1 at 10. But Plaintiff is not challenging the foreclosure in this Court; she is challenging Defendants' conduct in instituting the foreclosure under the FDCPA and related Maryland statutes. ECF No. 36 at 7. Plaintiff argues that Defendants were obliged to explain to her that any action to

collect the underlying debt (outside of foreclosure) was barred by the statute of limitations, and that they failed to do so in violation of various statutes. *Id.* at 8. She notes that Rosenberg "can seek a deficiency judgment within a foreclosure action for any amounts not covered by the foreclosure sale," and that Rosenberg never disclosed to Plaintiff that it could not judicially enforce time-barred portions of the debt. *Id.*

Rosenberg responds that the complaint's only allegations regarding Defendants' attempts to collect a debt beyond a three-year statute of limitations are in paragraphs 32, 88, and 90. ECF No. 39 at 3. In paragraph 32, Plaintiff's allegations concern a letter sent in September 2021. ECF No. 30 at 4. Plaintiff's allegations as to violations arising from this letter are barred by the FDCPA's one-year statute of limitations. 15 U.S.C. § 1692k(d); *see Mateti v. Activus Fin., LLC*, No. DKC-08-0540, 2009 WL 2507423, at *8 (D. Md. Aug. 14, 2009) (explaining that, under the FDCPA, an action must be brought within one year from the date on which the violation occurs," and that "[g]enerally, the statute of limitations begins to run when a communication violating the FDCPA is sent") (internal citations omitted). Paragraphs 88 and 90 refers to a statement of debt filed in September 2023 in connection with the foreclosure case. ECF No. 30 at 7-10. Rosenberg notes that Maryland law allows a deficiency judgment to be obtained at any time within three years after the final ratification of the auditor's report (so long as the debt was not barred before July 1, 2014). ECF No. 39 at 4 (citing Md. Rule 14-216(b)). Here, there has yet to be a final ratification of the auditor's report, so the statute of limitations has not yet run on any debt for which the sale of the property is deficient to cover. Rosenberg's arguments on this point are well-stated and persuasive. The Court will dismiss all claims arising from Defendants' alleged attempts to collect a debt beyond the three-year statute of limitations.

### 4. Linear as Noteholder

Rosenberg argues Plaintiff's allegations arising from Linear lacking any rights as holder of the note must be dismissed. ECF No. 31-1 at 11-12. This is because a state court judge has found that Linear is the noteholder and because the note is a negotiable instrument that was properly transferred to Linear. *Id.* But since the state court has yet to render a final judgment, the Court cannot rely on principles of *res judicata*. And because Plaintiff alleges that Defendants forged an endorsement on the note, see ECF No. 36 at 9, the Court may not assume that the documents Rosenberg relies on are authentic. Rosenberg's arguments are better suited to resolution at summary judgment or renewal after the state court renders a final judgment. Rosenberg's motion is denied as to Plaintiff's allegations that Linear lacked rights as a noteholder.

### 5. Amount of the Debt and First Lien Position

Rosenberg argues that Plaintiff's claims under the FDCPA and the MCDCA related to the amount of the debt she owed under the HELOC and Linear's lien position must be dismissed. ECF No. 31-1 at 14-16. The Court finds that Plaintiff has plausibly alleged that Defendants violated the FDCPA and MCDCA by misrepresenting the amount of the debt Plaintiff owed, by misrepresenting the nature of the HELOC, and by misrepresenting that Linear held a first position on the HELOC. *See* 18 U.S.C. § 1692e(2) (prohibiting the "false representation of— (A) the character, amount, or legal status of any debt; or (B) any services rendered or compensation which may be lawfully received by any debt collector for the collection of a debt"); Md. Code, Com. Law § 14-202(8) (stating that it is prohibited for debt collectors to "[c]laim, attempt, or threaten to enforce a right with knowledge that the right does not exist); ECF No. 36 at 12. Whether these misrepresentations are material is a factual question that may not resolved in a motion to dismiss. Rosenberg's defenses to these allegations must be presented in a motion for summary judgment

because it would be inappropriate for the Court to consider Rosenberg's fact-bound arguments at this stage.

### 6. Federally Related Mortgage Loan

Plaintiff did not respond to Rosenberg's argument that her claims regarding misrepresentations about the HELOC not being a federally related mortgage loan must be dismissed. ECF No. 31-1 at 16-17. The Fourth Circuit has held that HELOC loans do not fall within the definition of federally related mortgage loans. *Lyons*, 112 F.4th at 279 (explaining that the Consumer Financial Protection Bureau had the authority to exempt HELOCs from "federally related mortgage loans"). Because the HELOC is not a federally related mortgage loan as a matter of law, Plaintiff's claims that Defendants misrepresented the HELOC as not being a federally related mortgage loan are not plausible, and these claims will be dismissed.

### 7. Rosenberg's Exemption from the MCPA

Rosenberg argues that Plaintiff's claim against it under the MCPA must be dismissed because the MCPA exempts the professional services of lawyers from its requirements. ECF No. 31-1 at 17. Md. Code, Com. Law § 13-104(1). Rosenberg is a law firm and the individual Rosenberg defendants are lawyers that have and continue to practice within the Rosenberg firm. This Court has held that the MCPA exemption for lawyers applies "even when plaintiffs have alleged that they were acting in some way other than their professional capacity." *Stewart v. Bierman*, 859 F. Supp. 2d 754, 768 (D. Md. 2012). But more recently, the Maryland Supreme Court has held that "in the debt collection context, where a lawyer or law firm engages in debt collection activity which: (1) requires a license under [Maryland Collection Agency Licensing Act ("MCALA")]; or (2) which would be prohibited under MCDCA, the professional services exemption of the [MCPA] . . . does not apply to the conduct or services." *Andrews & Lawrence*

16

*Pro. Servs., LLC v. Mills*, 467 Md. 126, 156 (2020); *see also Nagle & Zaller, P.C. v. Delegall*, 480 Md. 274, 293 (2022).

Rosenberg argues that its activities in connection with the HELOC and the foreclosure of Plaintiff's property are exempt under the MCPA. But to accept this argument, the Court would also need to accept the factual premises that Rosenberg submits in its motion. Making factual findings is prohibited at this stage. Accordingly, Rosenberg's motion to dismiss is denied as to Plaintiff's claim under the MCPA.

### 8. Evidence of Damages

Rosenberg argues that Plaintiff's complaint must be dismissed because she does not allege how her damages will be calculated. The Court rejects this argument. Plaintiff alleges actual and statutory damages, as well as attorney's fees and costs. In light of the claims that the Court will allow to proceed, her claim for damages is plausible. Rosenberg can investigate Plaintiff's claim for damages during discovery. Given Rule 8's lenient pleading standards, it would be improper to dismiss Plaintiff's claims because Rosenberg does not understand how Plaintiff might ultimately calculate her damages.

## V. Conclusion

For the reasons stated above, Linear's Motion to Dismiss is denied and Rosenberg's Motion to Dismiss is granted in part and denied in part. Plaintiff's claims under the FDCPA related to Defendants' collection attempts in September 2021 are dismissed because they are barred by the statute of limitations. And Plaintiff's claims arising Defendants' alleged attempts to collect a debt beyond the three-year statute of limitations are dismissed because that statute of limitations has not yet run.

      Defendants shall file answers to the Second Amended Complaint within 28 days of the date of this Order. Once the answers are filed, the Court will issue a scheduling order to allow the parties to begin discovery.


Date:   July 14, 2025                                                      /s/
                                                                               Timothy J. Sullivan
                                                                               Chief United States Magistrate Judge